**United States District Court**
For the Northern District of California

1

2

3                                    UNITED STATES DISTRICT COURT

4                                   NORTHERN DISTRICT OF CALIFORNIA

5

6    BOARD OF TRUSTEES OF THE                    No. 13-CV-02651 DMR
     LABORERS HEALTH AND WELFARE
     TRUST FUND FOR NORTHERN
7    CALIFORNIA; BOARD OF TRUSTEES OF
     THE LABORERS VACATION-HOLIDAY             **REQUEST FOR REASSIGNMENT;**
8    TRUST FUND FOR NORTHERN                   **REPORT AND RECOMMENDATION**
     CALIFORNIA; BOARD OF TRUSTEES OF          **RE PLAINTIFFS' MOTION FOR**
9    THE LABORERS PENSION TRUST FUND           **DEFAULT JUDGMENT**
     FOR NORTHERN CALIFORNIA; and              **[DOCKET NO. 19]**
10   BOARD OF TRUSTEES OF THE
     LABORERS TRAINING AND
11   RETRAINING TRUST FUND FOR
     NORTHERN CALIFORNIA,
12
             Plaintiffs,
13
         v.
14
     GALEDRIGE CONSTRUCTION, INC., a
15   California Corporation; and ALFRED
     NORMAN GALEDRIGE, an individual,
16
             Defendants.
17   _____/

18

19        Plaintiffs Boards of Trustees for Laborers Trust Funds move the court pursuant to Federal

20   Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendant Galedrige

21   Construction, Inc. ("Galedrige").[1]  Mot. [Docket No. 19] 1, 13.  Plaintiffs ask the court to order

22   Galedrige to pay (1) unpaid employee fringe benefit contributions and related interest and liquidated

23   damages, (2) liquidated damages and interest for late paid contributions, and (3) attorneys' fees and

24   costs.  Galedrige has not filed a consent to the jurisdiction of a magistrate judge pursuant to 28

25

26

27
         [1] Plaintiffs brought suit against both Galedrige Construction, Inc. and its president and CEO,
28   Alfred Norman Galedrige.  Compl. 1.  Plaintiffs subsequently dismissed Alfred Norman Galedrige
     (Docket No. 23), leaving the corporation, Galedrige Construction, Inc., as the only remaining defendant.

**United States District Court**
For the Northern District of California

1   U.S.C. § 636(c).  Therefore, the court requests that this case be reassigned to a District Judge and

2   issues this recommendation that the motion be granted.

### I.  Background and Procedural History

4          Plaintiffs are the Boards of Trustees for the Laborers Health and Welfare Trust Fund for

5   Northern California, the Laborers Vacation-Holiday Trust Fund for Northern California, the

6   Laborers Pension Trust Fund for Northern California, and the Laborers Training and Retraining

7   Trust Fund for Northern California ("the Trust Funds").  The Trust Funds, established under Trust

8   Agreements,[2] consist of all employee fringe benefit contributions that are to be made by employers

9   pursuant to collective bargaining agreements.  Compl. ¶¶ 3-6 [Docket No. 1]; Lauziere Decl.

10  [Docket No. 20] ¶ 10, Exs. A-E (Trust Agreement for Laborers Pension Trust Fund).  The Trust

11  Funds are multi-employer benefit plans within the meaning of sections 3 and 4 of the Employment

12  Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, 1003.  Compl. ¶ 5.

13  Galedrige is an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§

14  1002(5) and 1145, and an employer in an industry affecting commerce within the meaning of section

15  301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Compl. ¶ 7.

16         Galedrige executed a Letter of Understanding ("Letter") with the Northern California District

17  Council of Laborers ("Laborers Union") on July 30, 2007.  Compl. ¶ 9; Lauziere Decl. ¶ 6, Ex. F

18  (Letter of Understanding dated July 30, 2007).  By signing the Letter, Galedrige  became bound to a

19  written collective bargaining agreement with the Laborers Union ("Master Agreement").  Compl. ¶

20  9; Ex. G (Master Agreement).  The Master Agreement requires that employers pay contributions to

21  the Trust Funds for each hour their employees work as laborers.  Lauziere Decl. ¶¶ 7, 16, Ex. G

22  (section 28(A-B)).  An employer who fails to make the required contributions on or before the 25th

23  day of the month is subject to interest on the delinquent contribution at a rate of 1.5% per month, as

24  well as liquidated damages, which are set at $150 for each delinquent contribution.  Compl. ¶ 10;

25  Lauziere Decl. ¶¶ 7, 16, Ex. H (Liquidated Damage Program - Board Policy); Ex. G (section 28(A)).

26

27         [2] Plaintiffs represent that the Trust Agreements for all four of the Trust Funds contain the same
    terms and conditions as the Trust Agreement for the Pension Trust Fund for Northern California.
    Lauziere Decl. ¶ 11.  Therefore, any references to the "Trust Agreement" apply to the Trust Agreements
28  for all of the Trust Funds.  Lauziere Decl., Exs. A-E.

**United States District Court**

For the Northern District of California

The Trust Agreement permits Plaintiffs to file a lawsuit to recover payment of delinquent contributions and all attorneys' fees and costs incurred. Compl. ¶ 10; Lauziere Decl. ¶ 13, Ex. D (Article IV, section 3).

Plaintiffs assert that they have performed all conditions required of them by the Master Agreement. Compl. ¶ 12. However, they allege that Galedrige has failed to meet all of its obligations in the following ways:

- <u>Reported, but unpaid contributions.</u> Plaintiffs allege that Galedrige reported contributions due for April and August-November 2011, but failed to pay all contributions for these months, as well as interest and liquidated damages owed for that period. Compl. ¶ 13(a-b); Lauziere Decl. ¶ 17.

- <u>Unreported and unpaid (audit).</u> Plaintiffs conducted an audit of Galedrige covering the period of January 2010-June 2012, which revealed that Galedrige failed to report and pay contributions due for January, March, May-July, September-December 2010; January-June, August-November 2011; and April-June 2012. Compl. ¶ 13(d); Lauziere Decl. ¶ 30; Lauziere Supplemental Decl. [Docket No. 35] ¶ 3. Galedrige also failed to pay interest and liquidated damages on those amounts. Compl. ¶ 13(e); Lauziere Decl. ¶ 33.[3]

- <u>Paid, but paid late.</u> Plaintiffs allege that Galedrige failed to pay interest and liquidated damages on contributions that were paid, but paid late, for the period of February, April, July-December 2010, January-March, May and July 2011, and May 2012. Compl. ¶ 13(g); Lauziere Decl. ¶ 38.

---

[3] Plaintiffs also initially alleged that their review of employee check stubs revealed that Galedrige failed to report and pay all employee fringe benefit contributions for October 2010. Compl. ¶ 13(c); Lauziere Decl. ¶ 35. Plaintiffs sought unpaid contributions for this month in the amount of $3,035.91. Compl. ¶ 13(c); Lauziere Decl. ¶ 35. However, following the court's request for supplemental briefing, Plaintiffs conducted further review and found that this amount had already been accounted for in the amounts owed for the audit period. Lauziere Supplemental Decl. ¶ 10. Plaintiffs have withdrawn their request for this sum (Lauziere Supplemental Decl. ¶ 10.), and thus, the court will not consider it in its analysis.

**United States District Court**

For the Northern District of California

1    Plaintiffs filed the current action on June 10, 2013 pursuant to section 301 of the LMRA, 29

2  U.S.C. § 185, and sections 502(a)(3) and 502(e)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3) and

3  1132(e)(1) to recover due and unpaid benefit contributions, interest, liquidated damages, attorneys'

4  fees, and filing costs.  Compl. ¶ 1.  On August 29, 2013, Plaintiffs' counsel filed a motion for entry

5  of default, which the clerk entered the following day.  Docket Nos. 8, 10.  On December 12, 2013,

6  Plaintiffs voluntarily dismissed Alfred Norman Galedrige, the Responsible Managing Officer, CEO,

7  and President of Galedrige, after they received notice of his Chapter 7 bankruptcy proceeding.[4]  *See*

8  Pls.' Req. to Dismiss Def. Norman Galedrige Without Prejudice [Docket No. 23]; Compl. ¶ 7.  On

9  the same day, Plaintiffs filed this motion for default judgment.  The court held a hearing on January

10  23, 2014; Galedrige Construction did not appear.  Pursuant to court order, Plaintiffs submitted a

11  supplemental declaration on January 27, 2014.  Docket No. 35.

**II.  Default Judgment**

12

13      **A.      Legal Standard**

14    Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment following

15  a defendant's default.  Fed. R. Civ. P. 55(b)(2).  Whether to enter a judgment lies within the court's

16  discretion.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Shanghai Automation Instrument*

17  *Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (citations omitted).

18    Before assessing the merits of a default judgment, a court must confirm it has subject matter

19  and personal jurisdiction, as well as ensure adequacy of service on the defendant.  *See In re Tuli*, 172

20  F.3d 707, 712 (9th Cir. 1999).  If the court finds these requirements satisfied, it turns to the

21  following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

22        (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
         claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
23        action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the
         default was due to excusable neglect, and (7) the strong policy underlying the Federal
24        Rules of Civil Procedure favoring decision on the merits.

25

26      [4] Although Plaintiffs did not specify the Defendant against whom they alleged their third claim
     for relief for breach of fiduciary duty, it appears to be against Defendant Alfred Norman Galedrige as
27    an individual.  Compl. ¶¶ 24-29.  As noted, Plaintiffs have dismissed all claims against Alfred Norman
     Galedrige, and Plaintiffs did not otherwise seek default judgment on this claim, thus the court does not
28    consider this claim here.

4

**United States District Court**

For the Northern District of California

1   *Eitel*, 782 F.2d at 1471-72 (citation omitted).  In this analysis, a "court takes 'the well-pleaded

2   factual allegations' in the complaint 'as true'" (*DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854

3   (9th Cir. 2007)), "except those relating to the amount of damages."  *Garamendi v. Henin*, 683 F.3d

4   1069, 1080 (9th Cir. 2012) (citations omitted).

5           **B.      Analysis**

6           This court has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185

7   (granting labor union organizations power to sue employers in federal court) and 1132 (empowering

8   ERISA plan fiduciaries to bring civil actions to enforce plan terms).  Galedrige qualifies as an

9   "employer" under section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and as an

10  employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29

11  U.S.C. § 185.  Compl. ¶ 7.  The court exercises personal jurisdiction over Galedrige because it is a

12  California corporation with its principal place of business located in Alviso, California.  Compl. ¶ 7.

13          Regarding the adequacy of service of process, Rule 4(e)(2)(B) allows for service of an

14  individual by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual

15  place of abode with someone of suitable age and discretion who resides there."  Fed. R. Civ. P.

16  4(e)(1)(B).  With respect to corporations, Rule 4(h) authorizes service of process on corporations in

17  the manner prescribed by Rule 4(e)(1), which allows for service "following state law for serving a

18  summons in an action brought in courts of general jurisdiction in the state where the district court is

19  located or where service is made."  Fed. R. Civ. P. 4(e)(1) & 4(h)(1)(A).  Under California law, "[i]n

20  lieu of personal delivery of a copy of the summons and complaint to the person to be served as

21  specified in section 416.10 [(authorizing service on corporation by serving corporation's president or

22  CEO)] . . . , a summons may be served by leaving a copy of the summons and complaint . . . at [the

23  president or CEO's] usual mailing address . . . with the person who is apparently in charge thereof,

24  and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid

25  to the person to be served at the place where a copy of the summons and complaint were left."  Cal.

26  Civ. Proc. Code § 415.20(a).  The court has reviewed the proof of service and the record and finds

27  that the summons and complaint were properly served on Galedrige with substituted service.  *See*

28  Docket Nos. 5, 6, 13.

United States District Court

For the Northern District of California

1    Turning to the *Eitel* factors, under the first factor Plaintiffs will suffer great prejudice if the

2  court does not enter a default judgment because Plaintiffs are otherwise likely to be "without other

3  recourse for recovery."  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

4  2002); *see also U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, Case No. 12-CV-03746

5  EMC, 2013 WL 1007311, at *6 (N.D. Cal. Mar. 13, 2013) (first *Eitel* factor weighed in favor of

6  default judgment for plaintiffs trust funds against defendant employer who had failed to make

7  employee benefits contributions because plaintiffs would otherwise likely be without a remedy).

8    Considering the second and third *Eitel* factors, Plaintiffs' Complaint sufficiently pleads the

9  elements of a violation of 29 U.S.C. § 1145[5] by alleging that Galedrige is an employer obligated

10  under the collective bargaining agreement to make contributions to the Trust Funds but failed to do

11  so in accordance with the terms of that agreement.  Compl. ¶¶ 7-13.  In support of their claim,

12  Plaintiffs provided a copy of the Letter signed by Galedrige on July 30, 2007 binding it to the Master

13  Agreement.  Lauziere Decl. ¶ 6, Ex. F.  Additionally, Michelle Lauziere, Plaintiffs' Accounts

14  Receivable Manager, submitted a declaration stating that (1) for several months Galedrige had

15  reported contributions due, but failed to pay all contributions for those months; (2) that Plaintiffs

16  audited Galedrige and discovered that it failed to report and thus failed to pay contributions due for

17  several more months; and (3) Galedrige paid contributions late for some months.  Lauziere Decl. ¶¶

18  17, 30, 38.  Plaintiffs produced summaries of the audit results and other two periods, with each

19  summary showing the number of hours of covered work for which contributions were due, but not

20  paid. Lauziere Decl.,  Ex. I (Statement of Contributions Due The Laborers Trust Funds [Reported-

21  Not Paid]); Ex. L (Statement of Contributions Due The Laborers Trust Funds [Not Reported/Not

22  Paid]); Ex. P (Statement of Interest and Liquidated Damages Due [Paid/Paid Late]).  Thus, Plaintiffs

23

24

25

26
_____

27    [5] Section 1145 provides, in relevant part, that "[e]very employer who is obligated to make
contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively
bargained agreement shall, to the extent not inconsistent with law, make such contributions in
28  accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.

6

United States District Court

For the Northern District of California

1  submitted a legally sufficient complaint that is likely to prevail on the merits of section 1132(a)(3)

2  claim,[6] fulfilling the second and third *Eitel* factors.

3      The fourth *Eitel* factor is the sum of money at stake in the action.  "When the money at stake

4  in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core*

5  *Concrete Constr., Inc.*, Case No. 11-CV-02532 LB, 2012 WL 380304, at \*4 (N.D. Cal. Jan. 17,

6  2012) (citing *Eitel*, 782 F.2d at 1472).  However, "when the sum of money at stake is tailored to the

7  specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete*, 2012

8  WL 380304, at \*4 (recommending default judgment where the amount of money sought against the

9  employer was supported by the evidence and required by both the collective bargaining agreement

10  and 29 U.S.C. § 1132).  Here, the total sum of actual and statutory damages, interest, attorneys' fees,

11  and costs that Plaintiff seeks to recover is $220,235.54.[7]  Mot. 14.  This sum is appropriate as it is

12  supported by the evidence, tailored to Galedrige's alleged misconduct, and properly calculated, as

13  discussed below.

14      With respect to the fifth *Eitel* prong, Galedrige has not appeared in this action, nor contested

15  any of Plaintiffs' material facts.  Finally, reviewing the record, there is nothing that suggests

16  Galedrige defaulted due to excusable neglect.  Examining these facts in the aggregate, the court

17  finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference

18  for a decision on the merits.  The court therefore recommends that Plaintiffs' motion for default

19  judgment be granted.

20                                **III. Damages**

21      To recover damages after securing a default judgment, a plaintiff must prove the relief it

22  seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly,*

23  *Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico*, 238 F. Supp. 2d at 1175 (citing

24

25      [6] Plaintiffs originally sought a mandatory injunction compelling Galedrige to submit to an audit
26  by an auditor selected by Plaintiffs.  Compl. ¶¶ 30-33 (Fourth Claim for Relief), and \*14 (Relief
    Requested).  Plaintiffs appear to have abandoned this claim, as they do not seek default judgment on it.

27      [7] This sum represents: $108,093.02 (unpaid contributions), $47,871.68 (interest), $47,871.68
28  (additional award pursuant to section 1132(g)(2)(C)), $4,561.14 (liquidated damages and interest on late
    paid contributions), $10,695.00 (attorneys' fees), and $1,142.02 (costs).  Mot. 14.

**United States District Court**
For the Northern District of California

1  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).  With respect to cases

2  arising out of ERISA, the statute declares the following:

3        in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of
      this title in which a judgment in favor of the plan is awarded, the court shall award

4        the plan--
      (A) the unpaid contributions,

5        (B) interest on the unpaid contributions,
      (C) an amount equal to the greater of--

6              (i) interest on the unpaid contributions, or
            (ii) liquidated damages provided for under the plan in an amount not in excess

7              of 20 percent (or such higher percentage as may be permitted under Federal or
            State law) of the amount determined by the court under subparagraph (A),

8        (D) reasonable attorney's fees and costs of the action, to be paid by the defendant,
      and

9        (E) such other legal or equitable relief as the court deems appropriate.

10  29 U.S.C. § 1132(g)(2).  Interest on unpaid contributions is determined by using the rate provided

11  under the plan.  *Id.*

12       For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1)

13  the employer must be delinquent at the time the action is filed; (2) the district court must enter a

14  judgment against the employer; and (3) the plan must provide for such an award.  *Nw. Adm'rs, Inc.*

15  *v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citations omitted).  The first requirement is

16  met as the Complaint alleges that Galedrige was delinquent with its contributions and related

17  payments for interest and liquidated damages.  Compl. ¶¶ 13, 16-23; Lauziere Decl. ¶¶ 17-27; 30-32;

18  35-36.  The second requirement is met with the entry of judgment against Galedrige as the court

19  recommends for the reasons contained herein.  Finally, the third prong is met through the parties'

20  Master Agreement, which provides for liquidated damages and interest on delinquent contributions.

21  Lauziere Decl. ¶¶ 13, 16; Ex. G (sections 28(A-B)); Ex. H; *see also Idaho Plumbers & Pipefitters*

22  *Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989)

23  (section 1132(g)(2)(C)(ii) applies when "the plan provides for liquidated damages").

24       **A.     Reported, Unpaid Contributions; Interest and Liquidated Damages**

25       Galedrige submitted Employer Reports of Contributions for the months of April and

26  August-November 2011, detailing the hours of covered work and contributions due, but failed to pay

27  all of the contributions for these months.  Lauziere Decl. ¶¶ 17, 18; Ex. J (Employer Reports of

28  Contributions [April, August-November, 2011]).  The total principal balance due on the

**United States District Court**
For the Northern District of California

1    contributions reported, but not paid, is $57,273.79.  Lauziere Decl. ¶ 17, 26; Ex. I (Statement of

2    Contributions Due The Laborers Trust Funds [Reported-Not Paid]).

3           The total interest due on the unpaid contributions for these months totals $16,861.73.

4    Lauziere Decl. ¶ 27, Ex. H (1.5% per month compounded monthly from the month in which each

5    delinquent contribution for each Trust Fund was recorded and accumulated); Ex. K (Statement of

6    Interest and Liquidated Damages Due [Reported/Not Paid]).  The contract interest rate of 1.5% that

7    Plaintiffs request is not unreasonable and comports with other interest rates awarded in this district.

8    *See Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. California v. Perez*, Case No.

9    10-2002 JSW JCS, 2011 WL 6151506, at *10 (N.D. Cal. Nov. 7, 2011); *Bd. of Trs. of Laborers*

10   *Health & Welfare Trust Fund for N. Cal. v. Shade Const. & Eng'g*, Case No. 06-CV-06830 PJH,

11   2007 WL 3071003, at *8 (N.D. Cal. Oct. 19, 2007) ("The rate of 1.5% per month is not uncommon

12   in these contracts and not unreasonable.").  The contractual liquidated damages is $750.  Lauziere

13   Decl. ¶ 28, Ex. K ($150 in liquidated damages for each delinquent contribution).  However, as

14   section 1132(g)(2)(C) provides Plaintiffs the greater of the interest on the unpaid contributions or

15   liquidated damages, the court therefore recommends that Plaintiffs receive the greater interest

16   amount of $16,861.73.

17          The court thus recommends that Plaintiffs be awarded the total due for Galedrige's

18   unreported, unpaid contributions, with interest and statutory damages, for a total of $90,997.252.

19   Lauziere Decl. ¶ 23.

20          **B.      Unreported, Unpaid Contributions (Audit); Interest and Liquidated Damages**

21          Plaintiffs' audit of Galedrige covering the period January 2010-June 2012, revealed that

22   Galedrige failed to report and failed to pay contributions due and owing for the period of January,

23   March, May-July, September-December 2010; January-June, August-November 2011; and

24   April-June 2012.  Compl. ¶ 13(d); Lauziere Decl. ¶ 30.  The total principal balance due on those

25   unreported, unpaid contributions totals $50,819.23.  Lauziere Decl. ¶ 31, Ex. L (Statement of

26   Contributions Due The Laborers Trust Funds [Not Reported/Not Paid]).

27          The total interest due totals $31,009.85.  Lauziere Decl. ¶ 32 (1.5% per month compounded

28   monthly), Ex. H; Ex. N (Statement of Interest and Liquidated Damages Due [Not Reported/ Not

9

**United States District Court**

For the Northern District of California

1  Paid]).  Plaintiffs did not assess liquidated damages for these unreported, unpaid contributions.

2  Lauziere Decl. ¶ 33, Ex. N.  As section 1132(g)(2)(C) provides Plaintiffs the greater of the interest

3  on the unpaid contributions or liquidated damages, the court therefore recommends that Plaintiffs

4  receive additional statutory damages of $31,009.85.

5  The court thus recommends that Plaintiffs be awarded $112,839.13 the total due for

6  Galedrige's unreported, unpaid contributions, with interest and additional statutory damages.

7  Lauziere Decl. ¶ 23.

8  **C.    Liquidated Damages and Interest Accruing on Late Paid Contributions**

9  Plaintiffs also request the court award interest and liquidated damages due on contributions

10  that Galedrige paid, but paid late.  Compl. 12; Mot. 11, 14.  Plaintiffs allege that for the period of

11  February, April, July-December 2010; January-March, May and July 2011; and May 2012,

12  Galedrige paid the contributions but failed to pay those contributions on time, i.e., prior to the 25th

13  day of the month immediately succeeding the month in which the employee's work was performed.

14  Lauziere Decl. ¶ 38; Exs. H & P; Lauziere Supplemental Decl. ¶¶ 5-6.

15  For the late paid contributions, Plaintiffs may be entitled to contractual remedies, including

16  liquidated damages and interest.[8]  *Shade Const.*, 2007 WL 3071003, at *8 (emphasis added); *see*

17  *also Idaho Plumbers*, 875 F.2d at 217; *Bd. of Trs. v. Udovch*, 771 F. Supp. 1044, 1047 (N.D. Cal.

18  1991). Here, the parties' agreements provide that Plaintiffs will be permitted to assess liquidated

19  damages and interest on payments paid, but paid late.  Lauziere Decl. ¶¶ 13, 16; Ex. G (section

20  28(A-B)); Ex. H.  Plaintiffs seek both liquidated damages and interest on the late paid contributions.

21  **i. Liquidated Damages**

22  Plaintiffs seek liquidated damages for late paid contributions in the total of $2,100.  Lauziere

23  Decl., Ex. P (calculated at $150 per month).  To determine if a liquidated damages provision is

24

25  [8] Plaintiffs' motion indicates that they seek liquidated damages and interest not simply pursuant to contractual remedies outlined in the parties' agreements as the Ninth Circuit upheld in *Idaho*
26  *Plumbers*, but also through ERISA, 29 U.S.C. § 1132(g)(2)(E). Section 1132(g)(2)(E) provides that the court may award "such other legal and equitable relief as the court deems appropriate," and Plaintiffs
27  argue that the court should exercise its discretion under this provision to award interest and liquidated damages on the late paid contributions.  As the Ninth Circuit's decision in *Idaho Plumbers* permits
28  Plaintiffs to receive contractual remedies for late paid contributions, the court does not find it necessary to decide Plaintiffs' request under section 1132(g)(2)(E).

United States District Court
For the Northern District of California

1    enforceable, the court must analyze if (1) "the harm caused by a breach [is] very difficult or

2    impossible to estimate," and (2) "the amount fixed [is] a reasonable forecast of just compensation for

3    the harm caused." *Idaho Plumbers*, 875 F.2d at 217.

4          Although Plaintiffs' motion does not directly address these factors, the Trust Agreement

5    does. As in *Bay Area Painters & Tapers Pension Trust Fund v. Golden Vas Painting*, Case No.

6    10-CV-02923 CW DMR, 2011 WL 2020250, at *8 (N.D. Cal. Mar. 17, 2011), the underlying Trust

7    Agreement here describes the difficulty of estimating harm in advance of delinquent contributions.

8    Lauziere Decl., Ex. B, Article II, section 10 ("The Employer and Union have concluded that it

9    remains extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund

10   and the Pension Plan, which results from the failure of an Individual Employer to pay the monthly

11   Contributions in full within the time provided in the Trust Agreement"); *see also Udovch*, 771 F.

12   Supp. at 1049 ("the actual economic impact of these kinds of harms is sufficiently difficult to

13   estimate that liquidated damages provisions for delinquent contributions to fringe benefit trust funds

14   can satisfy the first prong of the *Idaho Plumbers* test."). Thus, the court finds that the first prong of

15   *Idaho Plumbers* is met here.

16         The parties' agreements also address *Idaho Plumbers*' second prong that the amount sought

17   be a "reasonable forecast of just compensation for the harm caused." *Idaho Plumbers*, 875 F.2d at

18   217. In their Master Agreement, the parties agreed that a liquidated damages flat-rate fee of $150

19   "reflect[s] the internal administrative costs incurred by the trust administrators in monitoring and

20   tracking such late contributions." Lauziere Decl., Ex. G (section 28(A)). The Master Agreement

21   also notes that "any adjustments [to the liquidated damages and interest] . . . shall be reflective of

22   true increase in the administrative and legal costs associated with the recovery of delinquent Trust

23   Fund contributions"—indicating that the current amounts are reflective of the current administrative

24   and legal costs associated with recovering these late payments. Lauziere Decl., Ex. G (section

25   28(A)).

26         Other courts in this district have concluded that a flat-rate $150 liquidated damages amount

27   is appropriate in similar circumstances. *See, e.g.*, *Perez*, 2011 WL 6151506, at *13 ($150 per month

28   liquidated damages); *Shade Const.*, 2007 WL 3071003, at *8 (finding good faith efforts were made

     to determine a rational relationship between the liquidated damages provision and the harms that

                                                    11

**United States District Court**
For the Northern District of California

1  could be caused by delinquent contributions where parties' agreement reflected that liquidated

2  damages of a flat-fee of $150 per month would compensate Plaintiffs for "the internal administrative

3  costs incurred by the trust administrators in monitoring and tracking such late contributions.").

4  Accordingly, the court finds the flat-rate $150 liquidated damages amount reasonable.

5  ###             ii. Interest

6  Plaintiffs seek interest for late paid contributions, totaling $2,462.14.  Lauziere Decl. ¶ 38,

7  Ex. P.  The court finds that good faith efforts were made in determining the interest rate.  *See Shade*

8  *Const.*, 2007 WL 3071003, at *8 (citations omitted).  Specifically, Galedrige's failure to make a

9  timely payment injured Plaintiffs, and interest compensates Plaintiffs for the delay in receiving the

10  contributions.  *Id.*  And, as noted above, the Master Agreement indicates that the current interest rate

11  is reflective of the current legal and administrative costs associated with recovering late payments.

12  Finding the interest rate reasonable and made in good faith, the court finds that Plaintiffs' request for

13  interest on the paid late contributions is warranted.  *See Bd. of Trustees v. KMA Concrete Const. Co.*,

14  Case No. 10-CV-05774 JCS, 2011 WL 7446345 (N.D. Cal. Dec. 20, 2011) ("[T]he interest rate

15  sought is reasonable and thus enforceable under federal common law as to the paid but paid late

16  contributions.").  The court thus recommends that Plaintiffs be awarded $2,100 in liquidated

17  damages and $2,462.14 for interest on Galedrige's late paid contributions, for a total of $4,562.14.

18  ### E.      Attorneys' Fees and Costs

19  Plaintiffs have incurred $10,695 in attorneys' fees representing 31 hours billed by Ronald L.

20  Richman, a senior counsel and shareholder at Bullivant Houser Bailey PC, at a rate of $345 per hour.

21  Richman Decl. [Docket No. 21] ¶¶ 3, 5; Ex. A.  Richman has practiced law since 1984 and handled

22  ERISA Trust Fund litigation since 1995, representing Plaintiffs at Bullivant Houser Bailey PC since

23  2006 and previously, at Stanton, Kay, and Watson from 1995-2002.  Richman Decl. ¶ 3.

24  Richman's fee of $345 per hour is a reasonable San Francisco Bay Area rate for ERISA

25  claims.  *See, e.g.*, *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving

26  hourly rate of $400 for associates); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, Case No.

27  08-CV-02560 SI, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550

28  for partner).  Having reviewed Plaintiffs' billing records, the court finds that the 31 hours expended

are reasonable.  The court therefore recommends that Plaintiffs recover $10,695 in attorneys' fees.

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1    Federal Rule of Civil Procedure 54(d)(1) grants district courts the discretion to award costs

2  to prevailing parties.  Fed. R. Civ. P. 54(d)(1); *Marx v. General Revenue Corp.*, 133 S. Ct. 1166,

3  1172 (2013).  Plaintiffs have incurred $1,142 in reasonable costs in the action to date.  Richman

4  Decl. ¶ 6, Ex. A.  The court therefore recommends that Plaintiffs be granted $1,142 in costs.

5                                            **IV.  Conclusion**

6    For the foregoing reasons, the court recommends that the District Court grant Plaintiffs'

7  motion for default judgment.  The court further recommends that the District Court award Plaintiffs

8  unpaid contributions, interest, and statutory damages in the amount of $208,398.52, and attorneys'

9  fees and costs amounting to $10,695.00 and $1,142.02, respectively, for a total of $220,235.54.

10    Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on

11  Galedrige and file proof of service with the court.  Any party may file objections to this report and

12  recommendation with the District Judge within 14 days of being served with a copy.  *See* 28 U.S.C.

13  § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

14

15    IT IS SO ORDERED.

16

17  Dated: February 21, 2014

18

19                                    _____
                                      DONNA M. RYU
20                                    United States Magistrate Judge



21

22

23

24

25

26

27

28